GEORGE H. DORR, Appellant, v. MARTIN BARNEY, Respondent.

*Tenancy — parol lease for more than one year — entry under — effect of — Notice of termination of tenancy — Failure to remove property from premises — effect of.*

On June 16, 1867, the plaintiff made a verbal lease to the defendant of a house and a brick-yard for one year, with the privilege of four, at defendant's option. The latter entered into possession and so remained for two years. *Held,* that, though the verbal lease was void as to the term of four years, yet by the entry of the defendant and his holding over after the expiration of the first year, it became a lease from year to year, subject to all the conditions of the verbal lease except as to the term.

In April, 1869, the defendant substantially told the plaintiff that he intended to leave at the end of that year, at which latter time he abandoned the house and removed most of the brick, leaving, however, a portion of them, covered by a shed, which were not removed until some time afterwards. The lease was never surrendered. *Held,* that, the fact that he occupied the premises with his brick and shed, after the expiration of the year, enabled the landlord to treat him as a tenant for another year.

Appeal from a judgment in favor of the defendant entered on the report of a referee.

The complaint alleges two causes of action, but the only one to which this appeal relates is a claim for the rent of certain real estate occupied by the defendant under a lease from the plaintiff. The facts relating to that cause of action, as found by the referee, are in substance as follows: On the 16th of June, 1867, plaintiff, being then the owner of a house and lot and brick-yard near Clayton, Jefferson county, made a verbal lease of said premises to defendant, for one year, commencing at that date, with the privilege of four years, at the option of the defendant, at the annual rent of seventy-five dollars, payable at the end of each year. The defendant went into possession, under the lease, at or about that date, and it is undisputed that he remained in possession two years, at least. In April, 1869, defendant requested plaintiff to lease the premises to other parties, but plaintiff refused unless defendant would settle with him for the year's rent and give him a clear receipt, which defendant refused to do, and the defendant, at the time, substantially

declared his intention to leave the premises by the end of the second year, but no written or formal notice of his intention to terminate the lease at that time was given by defendant to plaintiff. The premises were divided by a road, the house and some of the land being on one side of the road and the brick-yard on the other. At or prior to the end of the second year, defendant abandoned the possession of the house and land on one side of the road, also the land used in connection with the brick-yard on the other side; but a portion of certain buildings erected by defendant at the brick-yard, and which he had the right to remove, were not taken away till the fall of 1869, and the brick were not entirely removed till September, 1870. Prior to June, 1869, defendant bargained to sell to one Barker the larger portion of the brick, which portion was not separated from the rest, and defendant informed Barker he desired to vacate the premises by the end of the second year, and Barker thereupon, before the end of that year, saw plaintiff and asked him if he could let the brick that he was buying of the defendant remain on the premises, and plaintiff told him if he, plaintiff, came into possession, it would be all right; and of this, Barker informed defendant. Before the end of the second year, defendant removed all the brick except enough to fill the contract with Barker. Barker did not take as many as he bargained for, but complained of the quality, and for that reason refused to take the whole, and thereupon defendant, after June, 1869, sold what remained and the same were removed, mainly in the fall of 1869, but a few as late as September, 1870. The brick taken by Barker were removed in the summer of 1869 mainly, and the building that remained after June, 1869, was the covering of the brick left for Barker. There was no express acceptance by plaintiff of that portion of the premises abandoned by defendant, but plaintiff directed the tenant on his farm to cut the grass on the premises on the opposite side of the road from the brick-yard in the summer of 1869, and after June of that year, and said tenant also cut the grass on said premises in 1870, but without the direction of plaintiff, and the cellar of the house was used by the tenant in 1870, with the knowledge and assent of the plaintiff, for the storage of cheese of plaintiff and tenant. The premises on the other side of the road were fenced out of the pasture of plaintiff's farm, when defendant commenced

his occupancy in 1867, and just before the expiration of the two years, the fences were replaced by plaintiff's tenant, but by defendant's directions, and thereafter the tenant occupied the whole as part of plaintiff's pasture with the rest of the pasture, with the knowledge of plaintiff and without objection on his part, but the plaintiff, in his lease to the tenant in January, 1869, did not assume to rent to him the premises leased to defendant. Fifty dollars of the rent was paid in the fall of 1867, and $100 in June, 1869. It does not appear that plaintiff at any time after the expiration of the two years, and payment of the $100, demanded any further rent of defendant till this suit was commenced in September, 1871. The referee decided that the plaintiff was not entitled to recover rent of the brick-yard for the third and fourth years, and that the rent for the first two years has been substantially paid, but he ordered judgment for the plaintiff, on the other cause of action, for thirty-eight dollars and thirty-two cents, and thereupon the defendant entered a judgment in his favor for costs less that sum, and the plaintiff appeals.

*Levi H. Brown*, for the appellant.

*H. E. Morse*, for the respondent. The defendant having continued in the occupation of the demised premises after the expiration of the first year with the assent of the plaintiff, a valid tenancy, a new agreement for another year was created. (*Schuyler* v. *Leggett*, 2 Cow., 660; *People* v. *Ricker*, 8 id., 226; *Lounsbery* v. *Snyder*, 31 N. Y., 514; *Reeder* v. *Sayre*, 6 Hun, 564; *Webber* v. *Sherman*, 3 Hilt., 547; *Sherwood* v. *Phillips*, 13 Wend., 479.) Neither party was bound to give any notice to the other in order to terminate the tenancy at the expiration of the second year. The plaintiff could have removed the defendant by summary proceedings without notice if he had remained on the premises; and the defendant lawfully left the premises at the expiration of the second year without being bound to pay any further rent, even if he had not, in April, 1869, given the plaintiff verbal notice of his intention to leave at the end of the year. (*People ex rel. Gleahill* v. *Schackno*, 48 Barb., 551; *People* v. *Goelet*, 14 Abb. Pr. [N. S.], 130; *Parke* v. *Castle*, 19 How. Pr., 29; cited in 51 N. Y., 316; *Smith* v. *Littlefield*,

id., 540; McAdams' L. and T., 13; *Gibbons* v. *Dayton*, 4 Hun, 453.) A distinction is made respecting the necessity of notice where a lease is *in writing* for the term of one year and thereafter, until one or the other party thereto elects to terminate it. (*Pugsley* v. *Aikin*, 11 N. Y., 494.) Assuming that the defendant had no right to determine the tenancy at the end of the second year without written notice, the acts of the parties are ample from which to find a surrender. Any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the land-lord to resume, possession of the demised premises amount to a surrender by operation of law. (*Talbot* v. *Whipple*, 14 Allen, 177; Comyn's L. and T. [2d ed,], 336; *Stanley* v. *Koehler*, 1 Hilt., 354; *Murry* v. *Shave*, 2 Duer, 183; Taylor's L. and T., §§ 512–519; *Hedgeman* v. *Arthur*, 1 E. D. S., 147; *Bedford* v. *Terhune*, 30 N. Y., 462, 463, and cases there cited; *Williams* v. *Lester*, 54 Barb., 431; McAdams' L. and T., 115; *Pheno* v. *Popplewell*, 12 C. B. [N. S.], 334; Moak's Vansantvoord [3d ed.], 693.)

SMITH, J.:

The parol lease was not valid for more than one year, by the statute (2 R. S., 135, § 8), but as the defendant entered and held under it for more than a year, it inured as a tenancy from year to year, and it regulated the conditions of the tenancy in all respects except as to the duration of the term. (*Schuyler* v. *Leggett*, 2 Cow., 660; *People* v. *Rickert*, 8 id., 226; *Lounsbery* v. *Snyder*, 31 N. Y., 514; *Reeder* v. *Sayre*, 6 Hun, 564.) The defendant was, therefore, a tenant from year to year, and liable to pay the yearly rent specified by the parol lease, so long as he occupied the premises. The principal question is, when did the defendant's tenancy cease? That he occupied for two years, is not disputed. If for no longer, his tenancy terminated on the 16th June, 1869. But the referee has found that some of the defendant's buildings remained on the brick-yard till the fall of 1869, and that some of his brick continued there till September, 1870. So long as the defendant thus continued to occupy even a part of the premises, the tenancy was not terminated, unless there was some agreement, express or implied, between the tenant and his landlord, which had the effect to put an end to the tenancy, notwithstanding the defendant's continued possession. The referee

has not found a surrender. He found that at or prior to the termi
nation of the second year, the defendant abandoned the possession
of a part of the premises, but he found also that there was no express
acceptance by the plaintiff of the part so abandoned, and although
he found certain facts and circumstances relating to the subsequent
use by the plaintiff of some. part of the premises abandoned by
the defendant, he has not found that there was an implied accept-
ance.

The permission given by the plaintiff to Barker, as found by the
referee, to let the portion of the brick which Barker was buying of
the defendant remain on the premises, if he, plaintiff, came into
possession, was not, of itself, a termination of the tenancy, even
although granted with the knowledge of the defendant, and at his
request. Barker was bargaining for but a part of the brick, and
that part was not separated from the mass. And even a part of the
brick which Barker contracted for, ultimately came back to the
defendant's hands, while on the premises.

No sufficient notice was given by the defendant that he would
quit the premises at the end of the second year. True, it is found
that in April, 1869, he requested the plaintiff to lease the premises
to other parties, and on the plaintiff's refusing to do so except on
conditions with which defendant declined to comply, he substantially
declared his intention to leave the premises at the end of the second
year; but it is also found that he gave no written or formal notice
of his intention to terminate the lease at that time.

But even if the defendant had given explicit and formal notice
of his determination not to keep the premises another year, yet as
he remained in possession, nevertheless, after the expiration of the
year, such continuance in possession, notwithstanding what had
taken place, enabled the landlord to treat him as a tenant for another
year. The most that can be claimed by the defendant is, that the
holding over furnished only presumptive evidence of the continu-
ance of the tenancy, which was sufficiently rebutted by the facts
already adverted to. But as there was no surrender or acceptance,
the notice of intention to quit, found by the referee, did not repel
the presumption of a continuance of the tenancy arising from the
fact of the defendant's remaining in possession. The case of *Schuyler*
v. *Smith* (51 N. Y., 309) is an authority in point, in support of this

position. So, also, is the case of *Conway* v. *Starkweather* (1 Denio, 113) which is approved and followed in the case first cited.

The judgment should be reversed and a new trial had before another referee, costs to abide event.

TALCOTT, P. J., concurred; MERWIN, J., did not sit.

Judgment reversed and new trial ordered before another referee, costs to abide event.