Mull v. Boyle.

---

No. 21,343.

HENRY MULL, *Appellant*, v. JAMES BOYLE et al., *Appellees*.

SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT — *Grain Rent — Tenant Pasturing Growing Crop—Rights of Landlord.* Where the owner of land makes a contract with tenants that they are to raise, harvest and thresh a crop of wheat thereon, delivering to him one-third thereof at a railway station, in the absence of any further agreement affecting the matter he has no claim against them for a share of the proceeds of pasturing the growing crop.

2. SAME—*Pasturing Growing Crop—Damage to Land.* In an action by the owner against the tenants under such a contract, for damages done to the land by the pasturage, it is not error to instruct that they had a right to pasture the growing crop, being responsible to the owner for any resulting injury.

Appeal from Clark district court; LITTLETON M. DAY, judge. Opinion filed March 9, 1918. Affirmed.

*Robert C. Mayse,* of Ashland, for the appellant.
*Francis C. Price,* of Ashland, for the appellees.

The opinion of the court was delivered by

MASON, J.: Henry Mull, the owner of a tract of land, agreed with James, Charles and Ed Boyle that they were to grow a crop of wheat thereon, delivering to him one-third thereof. The agreement was carried out. Mull thereafter brought an action against the Boyles, alleging that they had, for their own benefit, pastured cattle upon the growing wheat between November and March, and asking judgment for $120, which he alleged to be one-third of the value of the pasturage. An objection to the introduction of evidence upon this part of the petition was sustained, and from this ruling the plaintiff appeals. A second cause of action was included in the petition, based upon the assertion that the land was injured by pasturing cattle thereon. On this count a trial was had, resulting in a verdict and judgment for the defendants. An appeal is taken therefrom on the ground of error in the giving and refusal of instructions.

1. The petition described the agreement between the parties in these words:

"A verbal contract of lease whereby plaintiff did for the following crop season rent to defendants jointly [the land referred to] in consideration of which the defendants did agree to farm said land and plant the same to wheat, furnish the seed therefor, harvest and thresh said wheat when matured, and deliver one-third of the crop therefrom to order of plaintiff at the nearest railway station."

The plaintiff, by the use of the terms "lease" and "rent," characterizes the contract as one creating the relation of landlord and tenant, and it is so treated in his brief. The argument upon which he bases his right to recover is substantially this: The statute declares that where the rent is payable in a share of the crop the lessor shall be deemed the owner of such share (Gen. Stat. 1915, § 5980) ; it is held that the landlord has such an ownership in the growing crop that he may maintain an action for the value of his share against a third person who

has negligently destroyed it (*Sayers v. Railway Co.*, 82 Kan. 123, 107 Pac. 641) ; the landlord and tenant under such a lease are regarded as tenants in common of the crop (24 Cyc. 1471) ; and inasmuch as the defendants, by pasturing the growing wheat, used to their profit a part of a crop which the plaintiff owned in common with them, they should account to him for the proceeds in proportion to his ownership. Upon this proposition the plaintiff cites the statute giving one cotenant a right of action against another for receiving more than a just proportion of rents and profits (Gen. Stat. 1915, § 5977), which, however, relates to the rights of tenants in common of the land rather than of the crops. Under a lease, as distinguished from a cropper's agreement, the ownership of the crops as between the landlord and tenant is ordinarily regarded as in the latter, although the rent is to be paid in a share thereof. (24 Cyc. 1469; 8 R. C. L. 376, 377; 16 R. C. L. 588.) But we do not think the controversy is to be settled by the consideration of where the title of the growing crop is deemed to be vested, but by determining the fair and reasonable construction of the contract that was entered into. It was not reduced to writing, but its terms are precisely set out in the pleading. The situation is substantially the same as though a written agreement had been made in the very words used by the pleader. The question presented is as to the legal effect of that language. And we think it reasonably clear that the provision, that the defendants were to deliver one-third of the "crop" at the railway station, meant that one-third of the grain was to be delivered, and from the fact that it was specified that the plaintiff was to receive one-third of the grain, without any reference to his obtaining any other profit out of the transaction, the fair inference is that this is all that he expected, or was entitled to. The defendants were entrusted with the management and control of the crop; it was for them and not for the plaintiff to say whether it should be pastured, and if so when and how, and, in the absence of any express reference to the matter in the agreement, we think they were entitled to the incidental profit.

Whether a part of what may be called the by-products is deemed to be included, without express mention, in an agree-

ment that the landlord is to receive a share of the crop as rent, may depend to some extent on the facts of the particular case. In *Moser v. Lower,* 48 Mo. App. 85, the landowner was held to be entitled to a share of the stalks under a contract giving him a proportion of the corn crop, but the other party was said to be a cropper, and the matter was affected by the practical interpretation given to the agreement. In *Black v. Scott,* 104 Mo. App. 37, the same rule was applied where the conditions may not have been the same, but no purpose was shown to extend the doctrine of the earlier case, or to do more than follow the precedent there established. In *Hansen v. Hansen,* 88 Neb. 517, the circumstance that the landlord's share of the corn crop was to be delivered to him at some distance from the land was held to indicate that the stalks were not meant to be included. In *Iddings v. Nagle,* 2 Watts & Serg. (Pa.) 22, it was suggested that an agreement to pay the rent by a delivery of grain in the bushel implied that the grower of the crop was to have the straw. In *Corey v. Struve,* 16 Cal. App. 310, the tops of sugar beets grown on shares were held to belong to the landlord, largely by reason of a local custom. The present case is not closely analogous to any of those cited, because the portion of the vegetation eaten by the grazing cattle was not part of the matured crop—it did not help to make up the finished product of the farming operation. The use made of the wheat field, resulting in no injury to the crop or the land, was an incidental advantage accruing from its temporary possession and control.

The petition alleges that by the *implied* terms of the contract the plaintiff was entitled to a share in the proceeds of the pasturage, but that is a mere conclusion of law and does not change the force of the allegations as to the facts concerning the contract which was actually made. It is suggested that the pasturage of the wheat amounted to the removal of the crops, giving a right of attachment. (Gen. Stat. 1915, § 5982.) This position is untenable, for it is not claimed that any injury to the crop resulted.

The conclusion announced is reached on the theory that the contract amounted to a lease, but no intimation is intended that a different result would have followed had it been interpreted as a cropper's agreement.

2. The legal question involved in the appeal from the judgment for the defendants on the second cause of action is substantially the same as that already considered. The trial court refused to give an instruction to the effect that the contract contemplated that the land should not be pastured by either party, and instructed the jury that, in the absence of an agreement to the contrary, the defendants had a right to pasture the growing wheat, being responsible to the plaintiff, however, for any damage to the land resulting therefrom. This is in accordance with what we have already decided, and as the verdict implied a finding that no injury resulted, the plaintiff could not have been prejudiced by the instruction in any event.

The judgment is affirmed.